UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

ROBERT JOHNSON,                                    **FIRST AMENDED COMPLAINT**

                                                    **14 CV 9477 (CM)**
                                                    **ECF Case**

                    Plaintiff,

            vs.

The CITY OF NEW YORK, POLICE
OFFICERS VIET DANG, Shield 19610,
ANTHONY TORTURA, and
SERGEANT DONALD GANNON,
in their individual and official capacities,

                                                    **JURY TRIAL DEMANDED**

                    Defendants.
---------------------------------------------------------x

Plaintiff Robert Johnson, by his attorney, Cyrus Joubin, complaining of the Defendants,

respectfully alleges as follows:


### PRELIMINARY STATEMENT

1.   This civil rights action arises from the false arrest and malicious prosecution of

Robert Johnson ("Plaintiff") after NYPD officers pulled over the van in which he was a

passenger and unlawfully detained him for an excessive period of time, denying Plaintiff

access to a bathroom, forcing him to urinate in his pants, then arresting Plaintiff for this

act.  Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983")

against the individual defendants for false arrest and imprisonment, malicious

prosecution, and failure to intervene, and a *Monell* claim against the City of New York

for the same constitutional violations.  Plaintiff seeks compensatory and punitive

damages, costs, disbursements, and attorney's fees pursuant to applicable state and

federal civil rights law.


### JURISDICTION

2.   This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

### VENUE

3.   Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

### JURY DEMAND

4.   Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

### PARTIES

5.   Plaintiff Robert Johnson is a 36-year-old, African-American male, a United States citizen, and at all relevant times a resident of the City of New York, State of New York.

6.   The individually named defendants Police Officer Viet Dang (Shield # 19610) ("PO Dang"), Sergeant Donald Gannon (Tax No. 924574) ("Sgt. Gannon"), and Police Officer Anthony Tortura (currently retired) ("PO Tortura") (collectively, the "individual defendants") were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

7.   On the date of the incident giving rise to this complaint, the individual defendants were assigned to the 44th and 50th Precincts.

8.     Each individual defendant is sued in his individual and official capacity.  At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

9.     Defendant City is a municipality created and authorized under the laws of New York State.  It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

**STATEMENT OF FACTS**

10.     On the evening of October 22, 2013, Robert Johnson ("Plaintiff") attended his friend Manuel Ameng's ("Mr. Ameng") baby shower on the Lower East Side of Manhattan, at East 6th Street.

11.     When the baby shower ended, Mr. Ameng needed help transporting the numerous presents to the home of his baby's mother, Lasandra.  Mr. Ameng had an automobile nearby but did not have a valid driver's license, so he asked Israel Casis, a guest at the baby shower, to drive the presents to the home of Lasandra in the Bronx.

12.     Israel Casis ("Mr. Casis") agreed to drive Mr. Ameng, Lasandra, and their baby shower presents to the Bronx, using Mr. Ameng's car.  Mr. Casis asked Plaintiff – a good friend of his – to accompany him and help deliver the presents, and Plaintiff agreed to do so.

13.     Also going to the Bronx that evening was Jose Calcon, another guest of the baby shower, who lived in the Bronx and wanted a ride home.

14.     These five individuals – Plaintiff, Mr. Ameng, Lasandra, Mr. Casis, and Mr. Calcon – boarded Mr. Ameng's beige GMC van ("the Van") around 9:30 PM, and they

headed toward the Bronx.  While Mr. Casis was driving, Plaintiff sat in the front passenger seat, and Mr. Ameng, Lasandra, and Mr. Calcon rode in the back of the Van with the many presents.

15.      Mr. Casis drove up the FDR East River Drive and onto the Bruckner Expressway in the Bronx.  Around 10 PM, at East 212 Street and White Plains Road, in Bronx County, the Van was stopped by a NYPD cruiser flashing its lights and sounding its siren.

16.      Mr. Casis immediately complied and pulled over.  Plaintiff saw two marked NYPD vehicles and four uniformed officers, including PO Dang, from the 50th Precinct in the Bronx.

17.      The stop of the Van took place in the confines of the NYPD's 47th Precinct, not 50th Precinct.

18.      The four officers approached the Van and informed the occupants that the Van's license plate was "reported as stolen."

19.      In truth, there was no such report.   The officers were merely following a hunch, finding the Van – with its tinted windows, and multi-colored occupants – suspicious, and so they went on a wild goose chase for evidence of criminal activity.

20.      The officers ordered the five occupants of the Van to exit the vehicle, an order with which the occupants immediately complied.

21.      After exiting the Van, Plaintiff and the other occupants were patted down and searched, the contents of their pockets emptied.  Plaintiff's New York State ID was confiscated.  None of the five individuals in the Van possessed any contraband or evidence of criminal activity.

22.     The officers ordered them to stand behind the Van while they further "investigated."

23.     Another marked police car arrived, and Sgt. Gannon (who had stripes on his sleeve) and other officers from the 44th Precinct, including PO Tortura, exited the car and joined the four officers.

24.     During the investigation, Mr. Ameng showed the officers the valid insurance and registration papers for the Van, and said he was not driving because his license was suspended.

25.     Mr. Casis, the driver, showed the officers his valid New York State driver's license.

26.     After twenty minutes of waiting outside the Van, Plaintiff asked the officers, including PO Dang and PO Tortura, if he could use the bathroom, but they replied, "No, just stand there, you're not going anywhere."

27.     With his need to urinate growing stronger, Plaintiff asked about eight times over the course of the next forty minutes to use the bathroom, but he was repeatedly rebuffed by the officers.

28.     Plaintiff had done nothing unlawful or suspicious, and in expressing his need to urinate, he displayed respect and restraint.  It was clear that he had no connection to any crime and posed no threat or danger; nevertheless, the officers ordered him to stand still, being maliciously indifferent both to his innocence and his basic human needs.

29.     After an hour of waiting outside, Plaintiff felt the pain from holding his urine grow sharper, and he was visibly in pain, growing so helpless that he put his hand down his pants and squeezed his penis in a desperate effort to alleviate the strain.

30.     When Plaintiff could no longer contain his urine, he told the officers "I can't hold my pee anymore, I'm gonna use the bathroom in the chicken restaurant."  The fast food chicken restaurant – Kennedy Fried Chicken (3534 White Plains Road) – was on the street next to the stopped Van.

31.     As Plaintiff took two or three steps toward Kennedy Fried Chicken, PO Dang and two other officers grabbed him and handcuffed him behind his back, at which point Plaintiff collapsed to the ground and soiled himself.

32.     Plaintiff sat on the sidewalk in this humiliating condition for about fifteen minutes.

33.     Plaintiff was then escorted by the officers to a police van, where he spent an additional fifteen minutes handcuffed.

34.     Meanwhile, Mr. Ameng and Mr. Casis were given tickets for having tinted windows.  Jose Calcon and Lasandra were not charged with any offense and were let go at the scene.

35.     The officers drove Plaintiff to the 47th Precinct, where he was charged with two violation offenses:  disorderly conduct and public urination.

36.     Plaintiff was released after an hour and given two summonses (one for disorderly conduct, the other for public urination) to appear in Bronx Criminal Court (Summons Numbers 4415588585 and 4415593210), at 215 East 161 St.

37.     Plaintiff attended Bronx Criminal Court – Part SAP 2 – twice on Dockets 2014SX001635 (public urination) and 2014SX001637 (disorderly conduct).

38.     As for the public urination charge (a violation of Administrative Code 16-118), PO Dang (named as the Complainant) alleged that Plaintiff "urinate[d] in plain view on a public sidewalk."

39.     As for the disorderly conduct charge (a violation of Penal Law 240.20(1)), PO Dang alleges that Plaintiff "attempt[ed] to leave the scene of an investigation while cursing @ officers and displaying tumultuous behavior."

40.     The allegations with respect to both offenses are not only mendacious but deliberate fabrications, conscious distortions of the truth used by PO Dang and the other individual defendants to support the unlawful arrest and false charges.

41.     On March 13, 2014, there was a trial on both dockets in which PO Dang appeared and testified against Plaintiff.

42.     After hearing all the evidence, Judge R. Tolchin immediately found Plaintiff not guilty and dismissed both matters.

43.     The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

44.     There is a systemic failure to identify, discipline, and supervise NYPD officers who fabricate charges, a failure so widespread, obvious, and tolerated as to constitute a custom and policy of Defendant City.

45.     The NYPD's flaccid response to lying officers – particularly in the context of filing false charges – constitutes an irrational custom and policy that fosters a culture of mendacity in the NYPD.

46.     Proportionate and appropriate discipline sends a message to NYPD officers that they are not above the law and are accountable to the people whom they serve.  But when it comes to making false statements on court documents, NYPD officers virtually never face serious discipline.

47.     The Civilian Complaint Review Board ("CCRB") has no jurisdiction to investigate allegations of fabricated statements by NYPD officers in criminal court documents.  Investigating, controlling, and punishing this type of wrongdoing is the responsibility of the NYPD.

48.     The inadequacy of NYPD's supervision and discipline with respect to dishonesty in the filing of criminal charges is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest people and file charges unlawfully, a pressure not tempered by adequate safeguards that ensure citizens are not wrongfully arrested and charged.

49.     As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

        a.   Violation of his constitutional rights under the Fourth Amendment to the United States Constitution;

        b.   Severe emotional trauma, distress, degradation, and suffering.

## SECTION 1983 CLAIMS

## FIRST CLAIM

**Deprivation of Federal Civil Rights Under Section 1983**

50.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

51.     All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

52.     All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

53.     The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

54.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

### False Arrest Under Section 1983

55.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

56.     By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free of false arrest.

57.     As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

58.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## THIRD CLAIM

### Malicious Prosecution Under Section 1983

59.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

60.     By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free of malicious prosecution.

61.     Without probable cause, the individual defendants directly and actively initiated a criminal proceeding against Plaintiff, creating a fraudulent theory of guilt, providing a mendacious complaint to the D.A..

62.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## FOURTH CLAIM

### Failure to Intervene Under Section 1983

63.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

64.     Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

65.     The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

66.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged .

## FIFTH CLAIM

## Municipal Liability Under Section 1983

67.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

68.     By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment right to be free of false arrest and malicious prosecution through its failure to train, supervise, and discipline mendacious and malicious officers; and through its fostering a culture of abuse and dishonesty among those who wield considerable power over the lives of everyday citizens.

69.     As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged .

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

a.     An order awarding compensatory damages for Plaintiff Robert Johnson in an amount to be determined at trial;

b.     An order awarding punitive damages in an amount to be determined at trial;

c.     A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

d.     Such other and further relief as this Court may deem appropriate.

DATED:     April 3, 2015            _____s/_____
            New York, New York      CYRUS JOUBIN, ESQ.
                                    88 Pine St., 14th Floor.
                                    New York, NY 10005
                                    (703) 851-2467

joubinlaw@gmail.com
Attorney for Robert Johnson